626 A.2d 1265

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

**v.**

**Daniel B. AHLBORN.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 26, 1993.

Decided June 3, 1993.

Reargument Denied July 22, 1993.

---

William A. Kuhar, Jr., Asst. Counsel–Appellate Section, for appellant.

Edward R. Schellhammer, for appellee.

Before CRAIG, President Judge, McGINLEY, J., and WRIGHT, Senior Judge.

McGINLEY, Judge.

The Department of Transportation (DOT) appeals from an order of Judge Norman A. Krumenacker, III, of the Court of Common Pleas of Cambria County (trial court) that sustained the appeal of Daniel B. Ahlborn (Ahlborn) from a ninety-day suspension of his driver's license. Ahlborn was charged in a criminal proceeding with possessing 1.4 grams of marijuana, in

violation of Section 13(a)(31)(i) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act).[1] He pleaded guilty on January 6, 1992. On February 20, 1992, he was sentenced to thirty days county probation, with $50 in costs. On April 20, 1992, DOT notified Ahlborn that his driving privilege was suspended for ninety days pursuant to Section 13(m) of the Drug Act.[2]

At the time of Ahlborn's conviction and sentencing, Section 13 of the Drug Act, relating to prohibited acts and penalties, provided in subsection (m):

> Notwithstanding any other provision of this act, any person ... who possesses ... any controlled substance, in addition to any other penalty provided in this or any act, upon conviction for a violation of this act, shall have his or her operating privilege suspended. The clerk of any court of this Commonwealth, within ten days after final judgment of conviction for violations of this act requiring suspension under this section, shall send to the Department of Transportation a record of the conviction on a form provided by the Department of Transportation. When the Department of Transportation suspends the operating privilege of a person under this subsection, the duration of the suspension shall be as follows:

> (1) For a first offense, a period of 90 days from the date of suspension.

> (2) For a second offense, a period of one year from the date of suspension.

> (3) For a third offense, and any offense thereafter, a period of two years from the date of suspension. Any multiple suspensions imposed shall be served consecutive-

1. Act of April 14, 1972, *as amended*, P.L. 233, 35 P.S. § 780–113(a)(31)(i). Section 13(a) prohibits, among other things: "(31) Notwithstanding other subsections of this section, (i) the possession of a small amount of marihuana only for personal use...."

2. 35 P.S. § 780–113(m), added by the Act of December 22, 1989, P.L. 701.

ly.[3]

When Ahlborn pleaded guilty and was sentenced he was not informed that a suspension of his driver's license was mandatory.

In accordance with instructions provided on the DOT notice Ahlborn filed a statutory appeal of his suspension pursuant to Section 1550 of the Vehicle Code, 75 Pa.C.S. § 1550. At Ahlborn's hearing, the trial court sua sponte questioned the effect on Ahlborn's appeal of this court's recent decision in *Duffey v. Department of Transportation, Bureau of Driver Licensing*, 147 Pa.Commonwealth Ct. 280, 607 A.2d 815 (1992), *petition for allowance of appeal granted*, 533 Pa. 663, 625 A.2d 1195 (1993) The trial court noted that in *Duffey* this court held that the ninety-day suspension of a driving privilege pursuant to Section 6310.4 of the Crimes Code, 18 Pa.C.S. § 6310.4, for conviction of an underage drinking offense set forth in Section 6308(a), 18 Pa.C.S. § 6308(a), was part of the criminal penalty and not a collateral civil consequence of the criminal conviction. Because the licensee in *Duffey* had not been notified of this aspect of the criminal penalty when he entered his plea and was sentenced by the district justice, this court concluded that the suspension was an illegal criminal sentence imposed sub silentio on the uninformed licensee, in violation of his right to due process of law as expressed in various Rules of Criminal Procedure. Here, the trial court directed the parties to file briefs on the applicability of *Duffey* to the present case.

After considering the briefs, the trial court concluded that the fundamental principle of *Duffey* is that where the legislature provides for a license suspension as a direct criminal penalty, and sets it forth in the same Act that proscribes the conduct, then due process requires that the defendant be given notice of that penalty in order to enter an informed plea. Because the court regarded Section 13(m) of the Drug Act as mandating suspension, it rejected DOT's proffered distinction

3. Section 13(m) has since been amended by the Act of April 16, 1992, P.L. 165, to extend the period of suspension for a first offense from ninety days to six months.

that Section § 6310.4 of the Crimes Code directs the court to order the suspension, while Section 13(m) of the Drug Act does not. The trial court also rejected DOT's claim that this issue should not have been raised sua sponte:

> [Counsel for DOT] argues that a judge is an impartial hearer of the case who renders a decision on the facts presented according to the applicable law. We agree. However, a judge need not make his decision based on the law as given to him by the parties. He may rely on law as presented by the parties, of course, but he may rely also on statutes or cases of which he is aware or which he researches after hearing the facts.

Opinion of the Trial Court of August 20, 1992, slip op. at 4. The court sustained Ahlborn's appeal and set aside his suspension.

On this appeal DOT raises the following questions: (1) whether the trial court exceeded its scope of review in a license suspension appeal by considering whether due process required Ahlborn to be informed that entry of plea of guilty to possession of a small amount of marijuana would result in suspension of his driver's license under Section 13(m) of the Drug Act and (2) whether due process in fact requires such notice.

▮▮ Concerning the scope of the trial court's review, DOT cites the often noted principle that the trial court is limited to determining whether the licensee was in fact convicted of the offense and whether DOT acted in accordance with law in imposing the suspension. *Martino v. Commonwealth*, 116 Pa.Commonwealth Ct. 200, 541 A.2d 425 (1988). DOT emphasizes that the text of Section 13(m) specifies that the suspension is mandatory and that it has no discretion with respect to imposing a suspension or the length and method or service of the suspension. DOT maintains that by submitting the certified record of conviction to the trial court, it met its burden of proof. In line with the many cases that hold consistently that a driver may not attack or impugn the validity of the underlying criminal conviction in a civil license suspension appeal,

DOT asserts that the question of whether due process required notice to Ahlborn of the license suspension may be addressed only in a criminal proceeding involving either withdrawal of the guilty plea or some form of post-conviction relief.

However, the trial court correctly concluded that, as in *Duffey,* if a particular license suspension is the direct penalty for conviction of a crime, then the court must consider the licensee's claim that he or she was not informed of that penalty at the time of pleading guilty. A trial court must determine whether DOT acted lawfully, and no official entity has the power to impose a license suspension in violation of due process.

█ DOT contends that a court may not request and elicit argument on an issue not raised by the parties. In the appropriate setting such consideration is actually required. For example, in *Jefferson Memorial Park v. West Jefferson Hills School District,* 397 Pa. 629, 156 A.2d 861 (1959), the plaintiff cemetery, in its action for a refund of taxes paid under protest to a school district, relied upon an inapplicable statute before the court of common pleas, and the common pleas court granted judgment on the pleadings for the school district. Reversing, the Supreme Court held:

[T]he rule that, on appeal, we will not consider a matter which the appellant did not raise in the court below or the lower court did not pass upon is not applicable to a question whether the facts pleaded in a complaint state a good cause of action. What we review in such instance on appeal is exactly what the court below had before it, viz., the sufficiency of the complaint under relevant law. *If there is a positive statute that, on the basis of the facts pleaded, gives the plaintiff a cause of action, no other course is open to a court than to sustain the complaint.*

*Jefferson Memorial Park,* 397 Pa. at 634, 156 A.2d at 863–64 (emphasis added). *See also Weiss v. Equibank,* 313 Pa.Superior Ct. 446, 460 A.2d 271 (1983) (plaintiff not obliged to identify legal theory underlying his complaint, the burden is on the court).

The appellant and moving party in a de novo appeal before a trial court on a license suspension is in a position similar to that of a plaintiff pleading a cause of action. Although DOT bears the initial burden of submitting certified documents of conviction, once DOT submits the documents and rests the appellant must establish that he merits the relief requested. The court may not deny relief for failure to state the correct legal theory. The trial court's questioning the applicability of *Duffey* here was entirely warranted. Also, the trial court did not apply a precedent that was not raised and argued during the hearing. Rather, the trial court noted a recent decision and requested counsel's input to determine the decision's relevance and then directed the parties to file briefs. As the trial court stated, "Our only stake in the outcome of this case is that we determine to the best of our ability the interests of justice." Opinion of the Trial Court of August 20, 1992, slip op. at 4.

Regarding DOT's contention that a claim such as Ahlborn's must be raised by seeking a withdrawal of the guilty plea in the criminal proceeding we emphasize that a challenge to a license suspension as an illegally imposed criminal penalty is not necessarily a collateral attack on the criminal conviction itself. To contest the notice of suspension from DOT, a licensee files a statutory civil license suspension appeal pursuant to Section 1550 of the Vehicle Code in accordance with instructions provided in the DOT notice. In some cases the licensee may present a defense to the criminal charge. Such a presentation does constitute an impermissible collateral attack on the criminal conviction in the civil license suspension proceeding.[4] But where the licensee seeks only to challenge the after-imposed license suspension as an illegal criminal sentence *the licensee is not attacking the criminal conviction itself* or any other criminal penalties imposed pursuant to that

---

**4.** *See, e.g., Department of Transportation, Bureau of Driver Licensing v. Arnold,* 109 Pa.Commonwealth Ct. 45, 530 A.2d 980 (1987), holding that the preclusion of a collateral attack on the criminal conviction in civil license suspension proceeding applies even where the licensee, as in that case, has a complete defense to the criminal charge.

conviction. The licensee is not requesting in the Section 1550 proceeding that the criminal conviction be overturned. The conviction and the penalties previously imposed stand. The licensee claims only that the after-imposed penalty of license suspension is unlawful.

Where the licensee establishes in the Section 1550 proceeding that the challenged suspension is a criminal penalty under the particular statute involved the proceeding (though civil in form) is effectively converted into a criminal proceeding because the only subject matter is the validity of a portion of a criminal sentence. It is *not* in the nature of a nunc pro tunc appeal from or challenge to the original conviction and sentence. Those matters are not challenged or at issue and the relief sought is not withdrawal of the guilty plea or the reopening of the criminal proceeding.[5] The appeal is a *timely* challenge to an attempt to impose an additional criminal penalty after the original sentencing, which obviously cannot be raised until the attempt to impose the additional penalty occurs.[6] We believe the central question in such a case is whether the legislature intended the license suspension (under

---

**5.** Where a criminal defendant does seek to withdraw a guilty plea in such a case, the reason is that communication of the permissible range of sentences is one element of notice to a defendant that must be satisfied before a guilty plea may be regarded as having been "voluntarily and understandingly tendered." Pa.R.Crim.P. 319. *See Commonwealth v. Kulp,* 476 Pa. 358, 382 A.2d 1209 (1978); *Commonwealth v. Leonhart,* 358 Pa.Superior Ct. 494, 517 A.2d 1342 (1986), *petition for allowance of appeal denied,* 515 Pa. 620, 531 A.2d 428 (1987). However, so long as no additional penalty is imposed, of which the defendant was not made aware at the time of the plea, then the defendant did have full knowledge of the permissible range of sentences.

**6.** Nor may such a challenge be brought in an action for post-conviction relief, as DOT also suggests. The Post Conviction Relief Act, Sections 9541–9546 of the Judicial Code, 42 Pa.C.S. §§ 9541–9546, in Section 9543, relating to eligibility for relief, provides in relevant part:

(a) **General Rule.**—To be eligible for relief under this subchapter, a person must plead and prove by a preponderance of the evidence all of the following:

(1) That the person has been convicted of a crime under the laws of the Commonwealth and is:

(i) *currently serving a sentence of imprisonment, probation or parole for the crime;*

(ii) awaiting execution of a sentence of death for the crime; or

the particular criminal statute involved) to be the direct consequence of conviction. This question is the focus of DOT's second issue.

DOT contends that the license suspension under Section 13(m) is not part of the criminal penalty but a collateral civil consequence of the criminal conviction, noting that Section 13(m), unlike Section 6310.4 of the Crimes Code, does not state that the court shall "order" the suspension but requires the clerk of court to send a report of the conviction to DOT. Further, other provisions of the Drug Act do not make reference to license suspension as another "penalty" for violation, as do other Sections relating to underage drinking offenses. DOT asserts that neither Section 13(m) nor any other provision of the Drug Act contains language characterizing the operating privilege suspension mandated by Section 13(m) as a criminal penalty to be imposed upon a person convicted of a violation of the Drug Act.

■ If the license suspension is a collateral civil consequence, then precedent is clear that there is no duty on the part of the court to inform the defendant. *Commonwealth v. Wellington*, 305 Pa.Superior Ct. 24, 451 A.2d 223 (1982) (failure of judge to inform resident alien at plea colloquy that plea of guilty to charge of retail theft, second offense, could subject her to collateral civil consequence of deportation did not invalidate the plea).

■ The trial court correctly concluded that the license suspension pursuant to Section 13(m) is the direct criminal penalty for conviction of a Drug Act offense. An analysis of

(iii) serving a sentence which must expire before the person may commence serving the disputed sentence. (Emphasis added.)
License suspension imposed as a criminal penalty does not fall within the specified conditions for eligibility for post-conviction relief. Indeed, it is the novelty of adopting license suspension as a criminal penalty for offenses that may have nothing to do with the operation of a motor vehicle that gives rise to the conceptual and procedural difficulties in these cases. *See Duffey*, 147 Pa. Commonwealth Ct. at 287, 607 A.2d at 818, concerning a challenge raised during debate on the bill that became Section 6310.4 of the Crimes Code involving the constitutionality of taking a person's driver's license when the criminal conduct is unrelated to the operation of a vehicle.

the language of Section 13(m) of the Drug Act and related materials demonstrates that this was the intent of the legislature. The heading of Section 13 is "Prohibited Acts; Penalties," and the title of the Act of December 22, 1989, P.L. 701, No. 92, which added subsection (m), is "An act amending [the Drug Act], providing that a conviction for any violation involving possession or delivery of a controlled substance will result in a mandatory driver's license suspension." [7]

More importantly, the language of Section 13(m) itself provides that "in addition to any *other penalty* provided in this or any other act, upon conviction for violation of this act, [a person] shall have his or her operating privilege suspended," and also directs the clerk of courts to send to DOT a record of a conviction "for violations of this act *requiring suspension under this subsection.*" (Emphasis added.) Contrary to DOT's lame assertion, the plain language of Section 13(m) identifies license suspension as a "penalty" for conviction. The other penalties specified in the Drug Act are criminal penalties, and there is nothing to suggest that the license suspension is separate or distinct. This court in *Duffey* relied upon similar language to conclude that the license suspension provided in Section 6310.4 of the Crimes Code is part and parcel of the criminal penalty.

The legislative history is interesting and supports this conclusion. A last amendment was offered and agreed to before the bill that became Section 13(m) was passed. The amendment incorporated the words "for a violation of this act" after the word "conviction" in the first sentence. The explanation provided for this amendment was as follows:

> This is a clarifying amendment that is agreed to by the chairman of the Judiciary Committee. It arises from the fact that we found when we went over the drafting of the legislation that the legislation does not specifically state that

---

7. Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924, provides, "The title and preamble of a statute may be considered in construction thereof.... The headings prefixed to titles, parts, articles chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof."

the suspension of a driver's license relates to a violation of this act, the Controlled Substance, Drug, Device and Cosmetic Act. The amendment simply makes it very clear that the suspension is for a violation of the Controlled Substance, Drug, Device and Cosmetic Act.

1989 Legislative Journal—House 2106 (statement of Representative Moehlmann).[8] Also, as originally enacted, subsection (m) provided, "A copy of the court order shall be transmitted to [DOT]," language similar to the provision of Section 6310.4 of the Crimes Code that "the court . . . shall order the operating privilege of the person suspended." Section 13(m) was amended by the Act of December 17, 1990, P.L. 747, to substitute the provision requiring the clerk of any court to send notice to DOT of the conviction within ten days in place of this provision. We agree with Ahlborn's contention that the intent is the same—the determination of conviction is by the court and is processed through the court's agent the clerk. The imposition of the mandatory suspension is not a discretionary act by DOT.

 The record here shows that Ahlborn was not informed when he pleaded guilty to the criminal charge of the mandatory penalty of license suspension. In *Duffey* the court held that the imposition of the license suspension as a result of a guilty plea made without notice to the licensee of such a mandatory criminal penalty violated the licensee's due process rights. By analogy the same due process violation in this case requires the affirmance of the trial court and the sustaining of Ahlborn's appeal. It is true that *Duffey* focused on the express requirement that the court order the license suspension, obviously indicating that the suspension there was a criminal penalty. We agree with trial court here that, in the

---

**8.** Ordinarily, the remarks of an individual legislator in debate on the floor of the House or Senate may not be relied upon in ascertaining legislative intent, because they represent the views of only that person and not of the proposing or enacting body. However, committee and legislative commission reports may be considered. *Zemprelli v. Thornburgh*, 47 Pa. Commonwealth Ct. 43, 58, 407 A.2d 102, 109 (1979). The explanation of a clarifying amendment, with a representation of agreement by the chair of a committee that considered the bill, is sufficiently close to a committee report to come within the exception.

absence of an express requirement by the legislature that the court order the suspension, the proper inquiry is whether the suspension is a direct penalty uniformly imposed for a particular crime. As both Ahlborn and DOT point out the statute makes suspension mandatory upon conviction of a Drug Act offense. DOT makes no independent "determination" and exercises no discretion in imposing the suspension.

The trial court correctly concluded that this case is essentially identical to *Duffey*. We affirm that court's holding that the license suspension imposed on Ahlborn without notice that he was subject to such penalty when he pleaded guilty and was sentenced, and imposed some two months thereafter, constitutes an illegal criminal sentence that must be set aside.[9]

## *ORDER*

AND NOW, this 3rd day of June, 1993, the order of the Court of Common Pleas of Cambria County at Docket No. 1992–1306, dated August 20, 1992, is affirmed.

9. Pursuant to Section 762(a)(2)(ii) of the Judicial Code, 42 Pa.C.S. § 762(a)(2)(ii), this court exercises jurisdiction over appeals from the courts of common pleas in criminal actions for the violation of regulatory statutes administered by any Commonwealth agency that is subject to the provisions of Title 2 of the Pennsylvania Consolidated Statutes, relating to practice and procedure of Commonwealth agencies. The term "regulatory statute" does not include any provision of Title 18, the Crimes Code. In *Duffey* the trial court sustained the suspension and the licensee appealed to the Superior Court. At the request of DOT, Superior Court transferred to this court on the grounds that the matter was a civil license suspension appeal. This court's conclusion that the subject matter was the validity of an after-imposed criminal penalty under Section 6310.4 of the Crimes Code would have precluded our exercising jurisdiction over the matter but for Pa.R.A.P. 741(a). That Rule provides that jurisdiction in an appellate court is perfected if the appellee does not object on or before the last day for filing the record, unless the court orders otherwise, notwithstanding any provision of law vesting jurisdiction of such an appeal in another appellate court. Because the subject matter in the present case is the validity of an after-imposed portion of a criminal sentence DOT should have filed the appeal with the Superior Court. Even if the Drug Act is viewed as a "regulatory statute," DOT is not the agency that regulates possession and sale of drugs, and this court does not exercise jurisdiction over appeals from criminal convictions under the Drug Act. Ahlborn did not object and this court has jurisdiction under Pa.R.A.P. 741(a) to decide the matter.